GILLESPIE, Presiding Justice!
This suit was filed by Hubert Clyde O’Bryan, Jr., hereinafter referred to as Insured, against Jefferson Standard Life Insurance Company, hereinafter called Insurer, for the recovery of total disability *264 benefits under the provisions of an insurance policy issued by Insurer. After both parties rested, the Insurer requested a peremptory instruction, and the court refused it. The Insured requested a peremptory instruction, and it was granted and judgment was entered against Insurer for the amount of benefits due at the time suit was filed. There is no issue as to the amount of the verdict.
The principal question is whether the Insurer is liable for total disability benefits when (1) the disease that resulted in total disability commenced before the issuance of the policy, (2) the disability (as defined in the policy) commenced after two years from the date of issuance of the policy, (3) the terms of the policy limited benefits to disability by disease commencing subsequent to the issuance of the policy, and (4) Mississippi Code Annotated section 5687-03(A) (2) (b) (1956) provides that each accident and health insurance policy issued for delivery in this state shall contain a provision that no claim for disability (as defined in the policy) commencing after two years from the date of issuance of the policy shall be denied on the •ground that the disease had existed prior to the effective date of coverage of the policy. We hold that under the provisions of the statute the Insurer could not deny the claim of Insured.
The material facts on the principal issue are now stated. From 1955 through 1959 Insured had been under the treatment of several doctors, and in October 1959 his family physician referred him to Dr. Charles Neill, a neurosurgeon of Jackson, Mississippi. Dr. Neill referred Insured to Dr. Richard Naef, a neurologist and psychiatrist. Dr. Naef hospitalized Insured for four days in a Jackson hospital, and subjected him to thorough examination and numerous tests, including a spinal tap. On the basis of this examination, Dr. Naef made a diagnosis of multiple sclerosis, an incurable, irreversible, and inevitably crippling disease. This diagnosis was entered on the hospital records on November 3, 1959. Dr. Naef testified that when he examined Insured he had a mild degree of stiffness and clumsiness in his legs, but he could walk quite well, could do his work, and the manifestations were so slight that they were not a problem to Insured. At the time Dr. Naef discharged Insured on November 3, 1959, he explained to Insured that his trouble was an inflammatory process of temporary duration in the central nervous system, but out of kindness Dr. Naef did not tell Insured he had multiple sclerosis. Insured then returned to his job with the telephone company, and on August 30, 1960, he applied for the policy in question, which was a $10,000 life insurance policy with a rider providing benefits for total and permanent disability. The policy was issued and became effective on October 1, I960.- Dr. Naef continued to treat Insured, and his condition deteriorated to the extent that during September 1961 Dr. Naef told Insured that his condition had been diagnosed as multiple sclerosis. However, Insured continued to work and draw his pay until the early part of 1963, more than two years after the date the policy was issued.
In summary, the disease that resulted in Insured’s becoming totally disabled commenced not later than November 3, 1959. The policy was issued October 1, 1960. The Insured became totally disabled, as disability is defined in the policy, during 1963, more than two years after the date of issuance of the policy. The policy did not exclude from coverage the disease of multiple sclerosis by name or specific description.
The Insured relies on the provisions of Mississippi Code Annotated section 5687-03 (1956), which is part of the chapter entitled “Accident and Health Insurance.” It is in part as follows:
(A) Required provisions. Except as provided in paragraph (C) of this Section, each such policy delivered or issued for delivery to any person in this State shall contain the provisions specified in¡ *265 this subsection in the words in which the same appear in this Section; provided, however, that the insurer may, at its option, substitute for one or more of such provisions corresponding provisions of different wording approved by the Commissioner which are in each instance not less favorable in any respect to the insured or the beneficiary. Such provisions shall be preceded individually by the caption appearing in this subsection or, at the option of the insurer, by such appropriate individual or group captions or subcaptions as the Commissioner may approve.
* * * * * *
(2) A provision as follows:
Time limit on certain defenses: (a) After two (2) years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two-year period.
******
(b) No claim for loss incurred or disability (as defined in the policy) commencing after two (2) years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.
The policy issued to Insured provided for total and permanent disability benefits and defined disability as follows
If while this policy is in full force and effect, and before the anniversary of this policy on which the Insured’s age at nearest birthday is fifty-five years, the Company shall be furnished during the lifetime of the Insured and during the period of disability as herein defined, with due proof that the Insured has become totally disabled by bodily injuries or disease occurring or commencing subsequent to the issuance of this policy and while this policy is in full force and effect and that he has been continuously and wholly prevented thereby for six or more consecutive months from engaging in any occupation or employment whatsoever for remuneration or profit, the Company will agree: * * *.
The Insurer’s main argument is that under the terms of the policy the Insured may not recover because the disease that resulted in his disability commenced prior to the date the policy was issued. We are of the opinion that the provisions of Mississippi Code Annotated section 5687-03 (A) (2) (b) (1956) are decisive of the main issue in this case. The effect of this statutory provision is to write into the policy that Insurer shall not deny the claim for disability on the ground that the disease existed prior to the effective date of the policy, because the disability (as defined in the policy) commenced more than two years after the policy was issued and multiple sclerosis was not excluded from coverage by name or specific description.
The time of commencement of a disease and the time of commencement of disability resulting from the disease are not necessarily the same. Insured had multiple sclerosis at least as early as November 3, 1959, but it was not a disabling disease at that time, and the record conclusively shows that Insured did not become totally disabled (as defined in the policy) until more than two years after the effective date of the policy.
We hold, therefore, that Insurer is prevented by the terms and provisions of the statute from denying disability benefits on the ground that the disabling disease existed prior to the effective date of coverage of the policy.
Insurer contends also that the policy is void because of false and fraudulent *266 statements made by Insured in the application. We have considered carefully this contention, in the light of the pleadings, the proof, and the applicable law, and we are of the opinion that it has no merit.
There was no factual issue to present to the jury. Insured was entitled as a matter of law to recover the disability benefits under the policy. The judgment of the trial court is affirmed.
Affirmed.
All Justices concur.